IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASHIF RANA and SAIMA ANJUM,<br><br>  Plaintiffs,<br><br>  v.<br><br>YOUXIN GU a/k/a CINDY GU and J. C. INVEST GROUP, INC.,<br><br>  Defendants. | No. C 16-05589 WHA<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

## INTRODUCTION

In this housing discrimination action, plaintiffs move for a preliminary injunction preventing their landlord from proceeding with eviction. For the reasons stated below, plaintiffs' motion is **GRANTED**.

## STATEMENT

Plaintiffs Kashif Rana and Saima Anjum live with their minor children in a home in Fremont, which they rent from defendant Youxin Gu (also known as Cindy), in her capacity as president of defendant J. C. Invest Group, Inc., the manager of the property. In June 2015, Rana signed a one-year lease with Gu. The lease converted to month-to-month in June 2016. The lease provided that once it had converted to a month-to-month agreement, the owners needed to give notice of at least thirty days for any changes to the terms of tenancy, including termination or rent adjustments (Rana Decl., Exh. 1).

Plaintiffs researched licensing requirements and decided to pursue a license to operate a family day-care home.

On July 10, 2016, Rana contacted Gu via text message to seek permission for Anjum to operate a small day-care center in her home. Gu refused to assent, expressing concerns about

liability. Rana quickly followed up to state that Gu would have no liability whatsoever. Gu continued to refuse writing, "Sorry. I cannot allow this. There is a liability" (*id.*, Exh. 2).

In fact, California law voids any restriction the use of property for a "family day-care home" for six or fewer children, provided notice is given to the property owner. *See* Cal. Health & Safety Code §§ 1597.40(c), 1597.44. Later in the day on July 10, Rana sent an email to Gu stating that he and his wife did not need Gu's permission to start a family day-care center, provided it serviced six of fewer children. The email included a link to a website containing information about the legal issues surrounding family day-care centers (*id.*, Exh. 3). Gu responded by serving a notice to terminate tenancy dated July 17. The notice gave plaintiffs until September 19 to vacate the premises (*id.*, Exh. 4).

On July 27, out of fear of eviction, Rana informed Gu via text message that he and Anjum had canceled their plans to operate a home day-care center. Gu did not respond. On August 3, Rana followed up with Gu, restating that he and Anjum had canceled their plans and asking Gu to rescind the termination notice.

On August 4, Rana contacted Project Sentinel, a fair housing organization, which sent a demand letter to Gu on Rana and Anjum's behalf (on August 9). That letter implored Gu to rescind the termination notice (Pan Decl., Exh. 2).

On August 10, Gu contacted Rana and thanked him for responding to the termination notice. Nevertheless, Gu stated, "[a]t this time, we want our property back" and warned that a new termination notice would issue. The notice gave plaintiffs until October 12 to vacate the premises (Rana Decl., Exhs. 6–7).

Project Sentinel referred Rana to the Law Foundation of Silicon Valley, which wrote another demand letter to Gu on September 7, setting a deadline to respond of September 16 (Castillo Decl., Exh. 2). On September 19, Gu directed Rana, via email, to continue to pay rent through October 12 (Rana Decl., Exh. 8). The same day, counsel for Gu informed counsel for plaintiffs that the termination notices would not be rescinded. The letter from defense counsel stated, for the first time, that our plaintiffs were being evicted for a reason unrelated to the day care, as follows (Castillo Decl., Exh. 3):

2

> The subject premises was built in 1963 and is not in a very good condition. When Ms. Gu purchased the premises in 2008, she conducted a brief remodeling. At that time, the contractor suggested to replace all electrical wires due to the old age thereof. However, Ms. Gu did not have sufficient funds to proceed with the project. After confirming with the contractor that the existing wires were safe, Ms. Gu decided to defer the replacement. In addition, previous tenants ever [sic] reported plumbing blockage which turned out to be sewer line damages caused by tree roots. Since the premises was occupied, the contractor could only clean the sewer line as a temporary remedy. The tree roots still need [to] be treated sooner or later. In order to increase the value of the premises and make it more comfortable for the tenants, Ms. Gu thought about an extensive renovation a long time ago.

The letter further contended that Gu served the second termination notice because she believed the first was defective and that it was not a response to the letter from Project Sentinel, notwithstanding its service just two days after the letter was sent. (Counsel stated that Gu did not receive that letter until after issuing the second notice.) Finally, the letter stated that plaintiffs remained welcome to reapply for a new lease when the renovation is finished, even if they'd like to resume their plan for an in-home day-care center.

On September 22, plaintiffs' counsel responded with an offer to resolve the dispute as follows (*id.* Exh. 4):

> [I]f Ms. Gu rescinds the notices of termination that she issued and so advises me in writing of this; accepts full rent for October, 2016; provides me with copies of all inspection reports, proposals for repair, and any related permits or permit applications that she has obtained for the premises; and agrees to cease interfering with my clients' application for and operation of a family day care by 5 p.m. on Monday September 26, 2016, then my clients will agree to develop and enter into an agreement with Ms. Gu under which they agree to temporarily move out of the premises for the time of the anticipated repairs.

After further exchange, defendants did not alter their position and maintained that plaintiffs would need to vacate the premises on October 12. On September 27, plaintiffs' counsel informed defense counsel that they would be forced to pursue legal action. Hours later, Gu advised Rana that she wanted to send a contractor to inspect the home seeking to arrange a time. The inspection occurred on October 1 (Rana Decl. ¶¶ 20–21, Exh. 11).

Plaintiffs commenced this action claiming violations of various state and federal prohibitions on discrimination on September 30, and made an *ex parte* application for a temporary restraining order on October 5. An order set a hearing on the motion for the

following day and required plaintiffs to serve defendants. At the hearing, at which counsel for both sides (and Gu herself) appeared, the parties agreed to a temporary restraining order maintaining the status quo. Specifically, defendants were enjoined from terminating plaintiffs' tenancy until the Court could determine whether a preliminary injunction should issue and plaintiffs could not operate a home day-care center in that intervening time. Plaintiffs were also required to allow defendants to access the premises to make preparations for renovations upon reasonable notice (Dkt. No. 24).

That order set a hearing and briefing schedule to determine whether a preliminary injunction should issue. This order follows full briefing and oral argument.

**ANALYSIS**

Plaintiffs seeking a preliminary injunction must satisfy the following four factors: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tip in their favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

**1. LIKELIHOOD OF SUCCESS.**

The California Fair Employment and Housing Act prohibits property owners and operators of property from discriminating against any person on the basis of "race, color, religion, sex, gender, gender identity, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information . . . ." Cal. Gov. Code § 12955(a). Terminating a lease on a prohibited basis constitutes discrimination. Cal. Gov. Code § 12927(c)(1). The California Court of Appeal has recognized that discrimination on the basis of operating a family day-care constitutes source-of-income discrimination. *Sisemore v. Master Financial, Inc.*, 151 Cal. App. 4th 1386, 1416–17 (2007). It has also recognized that discrimination on that basis may have a disparate impact on women or families with children. *Id.* at 1423. An unpublished federal district court decision also acknowledged the viability of a discrimination claim on this theory under both federal and state law. *Vance v. Bakas*, No. 05-3385 (Judge Patricia Trumbull), 2006 WL 496053, at *4 (N.D. Cal. Mar. 1, 2006). Defendants do not dispute that an adverse housing decision based on plans to operate a

4

family day-care center can constitute illegal discrimination under federal or state law. This order need not resolve that question conclusively but accepts at this stage that plaintiffs are likely to succeed on that point.[1]

Discrimination under state and federal law may be shown by direct or indirect evidence pursuant to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dep't of Fair Employment and Hous. v. Superior Court*, 99 Cal. App. 4th 896, 902 (2002). Under that framework, a plaintiff must show (1) they are a member of a protected class, (2) they suffered adverse treatment with regard to housing, and (3) membership in the protected class was in part a motivating factor for the adverse treatment. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

Once a plaintiff has made that *prima facie* showing, the defendant may rebut it by articulating "some legitimate, nondiscriminatory reason for the action." A plaintiff may overcome a defendant's rebuttal by showing the proffered justification is merely pretext. This rebuttal may be based on the same evidence introduced to establish the *prima facie* case. *Ibid.*

Plaintiffs informed Gu of their intent to derive a source of income from operating a family day-care center, and Gu refused. Gu acknowledges that she was ignorant of the California law allowing the operation of family day-care centers at the time of defendants' request without the owner's permission (Gu Decl. ¶ 7). Nevertheless, defendants maintain that the termination of plaintiffs' lease less than one week after Gu refused to consent to their day-care plan were entirely unrelated. This order finds that in light of Gu's express refusal to permit plaintiffs to carry out their plan and the predominant timing of the initial termination notice, plaintiffs are likely to establish a *prima facie* case that the first notice of termination constituted a discrimination on the basis of plaintiffs' intended source of income under *Sisemore*.

Defendants contend that the fact that they issued the second notice of termination even after plaintiffs disclaimed their intent to run a family day-care center demonstrates that the termination could not have been motivated by discriminatory intent. By the time of the second

---

[1] For the same reason, this order accepts for the moment plaintiffs' contention that the alleged discrimination would have a disparate impact on women, such that federal subject matter jurisdiction is proper. In any case, for the moment, the Court will exercise supplemental jurisdiction over plaintiffs' state-law claims.

1    termination notice, however, plaintiffs and their counsel had already educated defendants about
2    plaintiffs' rights under California law to operate a family day-care center.  Thus, defendants'
3    decision to terminate the lease may still have been motivated by the concern that plaintiffs
4    would exercise their rights despite their non-binding disclaimer.  Moreover, particularly in light
5    of the timing of the second termination notice — issued the day after Project Sentinel sent a
6    demand letter to Gu on plaintiffs' behalf — the record demonstrates that it is likely that
7    defendants' motivation shifted from discrimination to retaliation.  *Walker v. City of Lakewood*,
8    272 F.3d 1114, 1128, 1131 (9th Cir. 2001); Cal. Gov. Code § 12955.7.

9         Defendants contend that the termination of plaintiffs' lease was justified by their need to
10   conduct renovations of the apartment, an assertion raised for the first time in September after
11   plaintiffs had already retained counsel and sent two demand letters.  The only sworn evidence
12   defendants submit to support their claim that they intend to conduct renovations is Gu's own
13   self-serving declaration.  Appended to that declaration are print-outs from websites indicating
14   that properties nearby draw higher rents.  Gu does not indicate whether she *ever* actually
15   reviewed those particular websites (nor has their reliability been established anywhere in the
16   record).  Gu vaguely states that she conducted market research "this year," but she fails to state
17   whether she performed that research before terminating plaintiffs' lease, much less whether that
18   research in fact motivated her decision to renovate the premises.  Gu also offers no analysis to
19   demonstrate that the nearby properties are comparable to the property at issue herein or that the
20   purported renovations would in fact allow Gu to charge a higher rent.

21        Defendants offer absolutely no contemporaneous evidence demonstrating that Gu or any
22   of her employees harbored an intent to conduct renovations at the time of either notice of
23   termination.  In her declaration, Rana avers that an inspection of the premises occurred on
24   October 1 (a fact ironically never addressed by defendants), but nothing in the record shows that
25   defendants have taken any further affirmative steps to prepare for renovations, even though the
26   temporary restraining ordered plaintiffs to "allow defendants to access the premises, upon 24
27   hours' reasonable notice, to conduct inspections, measurements, and other preparations for
28   renovation" (Dkt. No. 24).

6

Defendants' proffered justification rings most hollow upon consideration of the fact that defendants refused to accept plaintiffs' offer to temporarily vacate the premises for the duration of any necessary renovations. Defendants' illusory and belated assurances that plaintiffs' could reapply for housing and that they could operate a family day-care center if plaintiffs' reapplication is ultimately accepted does not change that conclusion. Defendants' justification seems pretextual.

The record shows and this order finds that plaintiffs are likely to succeed on the merits.

### 2. IRREPARABLE HARM.

"It is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Apt. Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011). Plaintiffs will suffer the loss of their tenancy in their home.

Defendants argue that plaintiffs will suffer no irreparable harm because California prohibits self-help eviction. Defendants will need to file an unlawful detainer case in state court to evict plaintiffs, at which, these allegations of discrimination and retaliation may be raised. Defendants offer no authority for the assertion that we must kick the can down the road in the hopes that a later court will prevent this irreparable harm. This argument is unpersuasive.

### 3. BALANCE OF HARDSHIP.

Plainly, our plaintiffs would suffer significant hardship if defendants are allowed to take adverse housing actions on improper discriminatory or retaliatory bases. The only hardship defendants would suffer is the inability to evict plaintiffs for any legitimate reasons. Rent is being paid on time. As stated, defendants have not offered any legitimate basis for evicting our plaintiffs. Their need to perform renovations seems disingenuous. There is no evidence that the need for renovations is so urgent as to cause undue hardship. In any case, defendants could have easily mitigated any hardship by accepting plaintiffs' offer to temporarily vacate the premises.

This order acknowledges that the lease agreement allows defendants to terminate or otherwise alter the lease agreement with thirty days' notice, but defendants' interest in legitimate alterations to the lease agreement must be balanced against the likelihood that plaintiffs will succeed in showing that defendants terminated the lease agreement in retaliation

7

for their efforts to enforce their rights to operate a family day-care. Accordingly, while defendants will be enjoined from terminating or modifying plaintiffs' lease agreement, that injunction will be subject to the possibility that they may seek leave from this Court to alter or terminate the lease agreement for legitimate purposes.

Gu also asserts that she and her husband have suffered extreme emotional distress as a result of this lawsuit. Although the Court is sympathetic to the stress that any lawsuit may cause on individuals, the general stress of facing a lawsuit has no bearing on the hardship defendants would suffer if a preliminary injunction issues.

### 4. PUBLIC INTEREST.

Plaintiffs argue that the public interest favors granting this injunction, inasmuch as it would prevent housing discrimination on the basis of membership in a protected class. Defendants respond that their property rights must be protected, and that landlords would be unfairly restricted whenever tenants wish to operate family day cares. They ignore that the express purpose of Section 1597.40(a) is "to prohibit any restrictions relating to the use of single-family residences for family day care homes." This order finds the public interest weighs in favor of an injunction.

### CONCLUSION

For the reasons stated above, plaintiffs' motion for a preliminary injunction is **GRANTED**, as follows:

- Defendants shall not terminate plaintiffs' tenancy, pursue an unlawful detainer action against plaintiffs, or make any other changes to plaintiffs' lease agreement without an order of this Court. Such a request may be made by filing a formal motion on the normal thirty-five day calendar and must be supported by sworn evidence. Any relief in favor of defendants will likely require them to provide a right of first refusal to plaintiffs.

- Plaintiffs shall allow defendants to access the premises, upon 24 hours' reasonable notice, to conduct inspections, measurements, and other preparations for renovation, *but not to perform any such renovations without a prior court order*.

- Plaintiffs shall continue to pay the full amount of their monthly rent on time by check delivered directly to defense counsel.

- A bond of $2000 is required against the possibility that the landlord will prevail on the merits. Plaintiffs must post the bond by

8

**DECEMBER 1, 2016**. This order remains effective until then (and after once the bond is posted).

This case turns mostly on state law. Only one unpublished district court decision has acknowledge the possibility that landlords must tolerate child-care centers on the theory that to do otherwise would be gender discrimination against women. Since the federal claim is the sole basis for subject-matter jurisdiction, this order further requires defendants to move for summary judgment on the federal claim, including all issues of law and hardship, such motion to be filed by **DECEMBER 22, 2016**, all parties to cooperate on expedited discovery. If the federal claim is dismissed, the Court may well remit this case and its predominantly state law issues to state court.

**IT IS SO ORDERED.**

Dated: November 14, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9